# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 13-732V
Filed: April 12, 2016
Not for Publication

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| JODI MANIS, | * | |
| | * | |
| Petitioner, | * | Attorney's Fees and Costs; Contested; |
| | * | Life Care Plan; Life Care Planner Fees |
| v. | * | and Costs; Attorney Hours; Supplemental |
| | * | Fees and Costs. |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Ronald C. Homer, Esq.*, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for petitioner.
*Michael P. Milmoe, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

**Roth,** Special Master:

  On September 25, 2013, Jodi Manis ("Ms. Manis" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (The "Vaccine Act" or "Program"). By filing her petition, petitioner asserted that she had sustained a shoulder injury related to vaccination ("SIRVA") and that the tetanus vaccine, listed on the Vaccine Injury Table[3], she received on October 5, 2010 was the cause of this condition.

  On March 4, 2014, respondent filed a Rule 4(c) report conceding that petitioner was entitled to compensation. Respondent's Report at 1, 3-5. Chief Special Master Dorsey issued a

---

[1] Because this published decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, codified as amended at 44 U.S.C. § 3501 note (2012). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2006).

[3] 42 C.F.R. § 100.3 (2011).

1

Ruling on Entitlement, asserting that petitioner was entitled to compensation on March 5, 2014 and the parties attempted to informally resolve damages. On May 28, 2015, Chief Special Master Dorsey issued a Decision awarding damages based on the parties' Proffer on Award of Compensation ("Proffer"). The Chief Special Master awarded petitioner a sum of $100,000. Decision Awarding Damages, issued May 28, 2015. The case was reassigned to the undersigned on October 21, 2015.

Petitioner applied for final attorney's fees and costs on November 9, 2015 ("Motion for Fees"). The total sum requested was $31,538.67. Motion for Fees at 1. On the same day, petitioner also filed a statement in accordance with General Order #9 indicating that petitioner did not incur any costs during this proceeding. General Order #9 Statement.

Respondent filed her response on January 29, 2016 ("Response"), noting objections to petitioner's use of a life care planner and some of the hours expended by petitioner's attorneys. Response at 1. Petitioner filed a reply[4] brief ("Reply") and a supplemental motion for fees on February 16, 2016. This matter is now ripe for review.

## I.  Applicable Law.

The Vaccine Act permits an award of reasonable attorneys' fees and costs. §15(e). Determining whether an application for fees is reasonable is a matter within the discretion of the presiding special master. *See Carrington v. Sec'y, HHS,* 85 Fed. Cl. 319, 322-23 (Dec. 10, 2008). Special masters are afforded considerable discretion when considering motions for attorney fees. For instance, it is within a special master's discretion to reduce fees *sua sponte*, without warning to petitioners. *Sabella v. Sec'y, HHS,* 86 Fed. Cl. 201, 208-09 (Mar. 2, 2009).

When considering motions for attorney fees and costs, the Court employs the lodestar method. *Schueman v. Sec'y, HHS,* No. 04-693V, 2010 WL 3421956 (Fed. Cl. Spec. Mstr. Aug. 11, 2010); *see also Blanchard v. Bergeron,* 489 U.S. 87, 94 (1989) ("The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.") (internal citations omitted). That said, a special master is not required to conduct a "line-by-line" analysis of a fee request. *Broekelschen v. Sec'y, HHS*, 102 Fed. Cl. 719, 729 (Oct. 31, 2011).

## II. Discussion.

Petitioner initially applied for $22,799.40 in final attorney's fees and $8,739.27 in attorney's costs on November 9, 2015. Motion for Fees, at 1. The total requested was $31,538.67. *Id.*

Respondent filed her Response on January 29, 2016, objecting to "one item of cost requested by petitioner" and to "some hours expended by petitioner's lawyers." Response at 1. More specifically, respondent objected to petitioner's use of a life care planner ("LCP" or "life

---

[4] Petitioner filed her reply as a Response to Respondent's Opposition to Petitioner's Application for Attorney's Fees and Costs.

care planner") and all costs and attorney's fees associated with the use of the life care planner in this case, asking that a reduction of $12,628.89 be made when awarding attorney's fees and costs.  Response at 4.

By way of background, in March of 2013, petitioner's counsel contacted respondent's counsel to advise that he was planning on conducting an onsite visit along with his life care planner and inquired as to whether respondent's counsel or a government retained life care planner intended to participate.  Response at 2.  Respondent objected to petitioner's use of a life care planner and requested a status conference to discuss the issue.  Response at 2.  On April 3, 2014 a status conference was held with the Chief Special Master.  During the conference, respondent's counsel expressed his opinions regarding the costs associated with petitioner's use of a life care planner and a site visit, stating that "in his experience in the Vaccine Program, the parties have not had to use life care planners in these types of SIRVA cases."  Response at 2, citing the Court's April 3, 2014 Order ("Order") at 1.

The Chief Special Master noted respondent's objections and "agreed that while petitioner may need physical therapy, medication, and may need to see a neurologist in the future, the retention of a life care planner, based on the specific facts of this case, is unnecessary."  Response at 3.  However, the Chief Special Master "encouraged petitioner's counsel to consult with her client to determine petitioner's damages without the use of a life care planner."  Order at 2.  Petitioner's counsel explained that it was not unusual to use a life care planner in these cases, especially where petitioner has a high insurance deductible and continuing injuries related to the vaccination.  Order at 2.  Petitioner's counsel advised that despite respondent's objection and the Chief Special Master's finding that the use of a life care planner was unreasonable, petitioner would move forward with the site visit and the use of the life care planner.  Order at 2.

I am not bound by the decisions or impressions of the previous special master assigned to a case.  *See McGowan v. Sec'y, HHS,* 31 Fed. Cl. 734, 737-38 (1994).[5]  This provides me with the opportunity to review matters assigned to me anew.  Respondent argues that "the question at the heart of this case is whether it was reasonable to hire a life care planner in a 'garden variety' SIRVA case involving a petitioner who did not undergo surgery."  Response at 6.  I cannot agree with the suggestion that this case, or any case, is "garden variety" any more than I can expect that every petitioner with a similar injury should perceive pain or disability in the exact same way.  Every petitioner who comes to this Program is unique and I owe them the time and the effort to individually review the facts of their case.

Ms. Manis reportedly has ongoing pain which at times can be debilitating.  Reply at 6.  Her pain is controlled with prescription pain medication, which causes opioid induced constipation requiring the use of additional medications.  Reply at 7.  She also takes medication for attention deficit hyperactivity disorder, thereby requiring the need for supervision by medical professionals to monitor the interaction and side effects of the various medications.  As a result, alternative methods of pain control and treatment must be considered.  Reply at 6-7.  The pain suffered by Ms. Manis, coupled with the use of prescription medications, reportedly makes it

---

[5] In Vaccine Act cases, decisions issued by special masters and judges of the U.S. Court of Federal Claims constitute persuasive, not binding, authority.  *Hanlon v. Secretary of Health and Human Services,* 40 Fed. Cl. 625, 630 (1998).

difficult for her to perform daily tasks around her home. Reply at 6-7. Additionally, Ms. Manis reportedly has a high medical insurance deductible which required consideration in accounting for her future medical needs. Order at 2.

Respondent identifies three objections to petitioner's application for fees. Petitioner, in turn, requests additional fees and costs associated with litigating their initial fees and costs application. I address each issue in turn.

1. **Respondent objects to specific "LCP associated attorneys' fees" in the amount of $4,992.00.**

Respondent's objection entitled "LCP associated attorneys' fees" relates to fees billed for communications with and related to the life care planner and for the site visit. Response at 5-6.

The Conway, Homer, Chin-Caplan ("CHCC") firm has a reputation for high quality, diligent, and competent representation of its clients since the inception of the Program. To that end, visits with clients are a routine part of their practice in order to assess the injuries and damages suffered by their clients. These visits have been compensated by the court in the past. *See, e.g., Patel v. Sec'y, HHS*, No. 13-851, 2015 WL 9694641 (Fed. Cl. Spec. Mstr. Dec. 22, 2015); *Perkins v. Sec'y, HHS*, No. 13-739, 2015 WL 6501201 (Fed. Cl. Spec. Mstr. Oct. 6, 2015).

Attorneys in this Program represent petitioners who are located all over the country. Visiting a client, with or without a life care planner, at a point in a case where a potential resolution or assessment of damages must be made, is appropriate. When utilizing a life care planner, communicating with and preparing the life care planner for the visit, and discussing the visit thereafter, are all necessary parts of the process. I find the attorney expenditure of time and resources related to the LCP to be reasonable. **Therefore, I see no reason to reduce the fees associated with the visit in the amount of $4,992.00.**

2. **Respondent objects to the "LCP costs" in the amount of $7,636.89.**

In order to assess damages in a case where there are ongoing needs, someone has to investigate and prepare the projected costs of those needs. In this case, a high medical insurance deductible would be part of that equation. Certainly, a seasoned life care planner, having the information at his or her ready disposal, can examine a petitioner's anticipated needs more quickly and expeditiously than an attorney who would need to do extensive research and who is generally billing at a much higher rate. Moreover, in order to accurately plan for future needs, a life care planner may routinely incur costs associated with meeting with the client to individually assess his or her individual needs.

Given life care planners' professional expertise, the projected costs for certain relatively common items (such as medications, physical therapy, neurology appointments, and high deductibles) should be readily available to them, and thus quickly accessible. Life care planners are expected to have familiarity with such commonplace costs. Following review of the documents submitted, the $5,580.00 billed for the life care plan itself and the $1,012.50 billed for

the projection of future costs for life care items in this particular case seems excessive. It is unlikely that a seasoned life care planner would require and expend the amount of time expended here to provide for and calculate the future expenses of commonplace, routine needs. For that reason, I have reduced the number of hours by half.

I have therefore reduced the cost of the life care plan to $2,790.00 (half of the requested total) and the cost of JMW for projected future costs of life care items to $506.25 (half of the requested total). The other costs associated with the preparation of the life care plan, including the life care planner's travel costs to meet with her client, are reasonable. **I am hereby granting a total of $4,340.64 in attorney's costs for the life care plan.**

### 3. Respondent Objects to the "Unreasonable" Hours.

I have reviewed the billing records and find nothing excessive or duplicative.

With respect to respondent's objection to multiple attorneys billing on a file, it is not unusual in firms with several attorneys who practice in the same area to strategize and consult with one another, recognizing that each attorney brings to a case his/her unique views and strengths. Such efforts are collaborative and of great benefit to the clients.

**I therefore find the request for a total of $22,799.00 in attorney's fees appropriate and reasonable in this matter.**

### 4. Petitioner requested an additional $5,605.50 in attorney's fees and $25.87 in attorneys' costs in a supplemental application filed on February 16, 2016.

On February 16, 2016, petitioner filed a supplemental application for additional fees and costs that were incurred after the filing of her initial application and reply to respondent's response ("Supplemental Application"). I find $25.87 in attorney's costs to be reasonable. However, while I understand that it is necessary to incur fees and costs while preparing substantive objections in a fee dispute, the billing records in this case seemed excessive and duplicative. It is within the discretion of the special master to determine the reasonableness of a request for attorneys' fees. *Rodriguez v. Sec'y, HHS,* 91 Fed. Cl. 453, 462 (2010), *aff'd,* 632 F.3d 1381 (Fed. Cir. 2011). Indeed, a special master may reduce a fee request *sua sponte. Sabella v. Sec'y, HHS,* 86 Fed. Cl. 201, 208-09, 221 (2009); *Carrington ex rel Carrington v. Sec'y, HHS,* 85 Fed. Cl. 319, 322 (2008). In my discretion, I find that reasonable amount of fees incurred would have been $3,464.00. **I have therefore reduced the supplemental fees and costs award to a total of $3,489.97.**

### III. Total Award Summary.

In light of the foregoing and pursuant to §15(e)(1), I find that counsel's $22,799.00 request for attorney's fees is reasonable and shall be granted in full, counsel's request for attorney's costs shall be reduced to $4,340.64, and counsel shall receive an additional $3,464.00 in attorney's fees and $25.87 in attorney's costs. For the reasons contained herein, **I award a lump sum of $30,629.51, representing reimbursement for attorney's fees and costs, in the**

**form of a check payable jointly to petitioner, Jodi Manis, and petitioner's counsel of record, Ronald Homer, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[6]

**IT IS SO ORDERED.**

**s/Mindy Michaels Roth**
Mindy Michaels Roth
Special Master

---

[6] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. *See* Vaccine Rule 11(a).